IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOE NO. 1, JANE DOE NO. 2, AND JANE DOE NO. 3, | § § § § § § § § § § § § § § § § | |
| PLAINTIFFS, | | |
| v. | | CIVIL ACTION NO. 3:20-cv-00106-M |
| TEXAS CHRISTIAN UNIVERSITY, DR. DIANE SNOW, DR. ANDREW SCHOOLMASTER, DR. ROB GARNETT, DR. DARRON TURNER, RUSSELL MACK, J.D., LEIGH HOLLAND and AARON CHIMBEL, | | |
| DEFENDANTS. | | |

## JOINT REPORT

Pursuant to the Court's April 9, 2020 Order Requiring Scheduling Conference and Report for Contents of Scheduling Order [Doc. No. 18] and as modified by the Court's Order of April 24, 2020 [Doc. No. 22], the parties submit the following Joint Report:

**1.      A Brief Statement of Each Parties Claims and Defenses.**

**A.      Plaintiffs' Claims:**

Jane Does Nos. 1, 2 and 3 have filed suit against Defendants, Texas Christian University, Dr. Diane Snow, Dr. Andrew Schoolmaster, Dr. Rob Garnett, Dr. Darron Turner, Russell Mack, Leigh Holland and Aaron Chimbel.  All Plaintiffs' allege that TCU and its agents conduct in failing to respond at all, responding inadequately and/or responding with deliberate indifference to their properly made complaints of racial and gender based discrimination constitutes violations of Title VI of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000d through 2000d-6, Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 through 1687, and in the case of Jane Does Nos. 1 and 3, violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 794, and Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 through 12189.  Plaintiffs' also contend that Defendants conduct constitutes violations of related Texas common law and statutory prohibitions against fraud, negligence, assault, intentional infliction of emotional distress, false imprisonment, violations of the Texas Deceptive Trade Practices Act, civil conspiracy and breaches of fiduciary duty and warranty.

**B.    TCU and Individual Defendants' Statement:**

Currently, the posture of the case is that Defendants' respective Rule 12 motions to dismiss the separate claims of Jane Doe Nos. 1, 2 and 3 are pending before the Court. Consequently, Defendants are not yet required to file an answer to the Plaintiffs' First Amended Complaint or assert defenses. It is anticipated that when the Court rules on the motions to dismiss, Defendants will then know which claims survive as to specific Defendants, and further, which claims, if any, the Court may require Plaintiffs to replead. At that point in time, Defendants will answer and raise appropriate defenses as to the surviving claims. Defendants contend they had one or more legitimate, non-pretextual reason(s) for academic and other actions taken towards the Plaintiffs. Defendants contend that any academic or other actions taken toward the Plaintiffs were not based upon any protected class or category, and were not due to unlawful retaliation, and Defendants deny violating the rights of any of the Plaintiffs.  In the interim and to in good faith comply with the Court's April 9, 2020 Order, below, the Defendants additionally

provide the following brief statement of the reasons for dismissal of each of the Plaintiffs' claims.

### JANE DOE NO. 1 ("<u>Doe 1</u>")

***TCU's Statement***

Doe 1, a TCU Honors College student, received a sanction for academic misconduct for plagiarism that occurred during a four-week Washington, D.C. pass-fail summer course in July 2019.  TCU investigated the circumstances surrounding the plagiarism. Doe 1 admitted she plagiarized. TCU then imposed an appropriate academic decision. The academic sanction TCU imposed was very lenient.  Doe 1 received a "No Credit" grade for the pass-fail course. Doe 1 remained in the TCU Honors College despite having plagiarized. Doe 1 fails to state claims against TCU for the following reasons:

(i)     TCU engaged in a good faith determination when finding Doe 1 engaged in plagiarism. This finding constitutes a legitimate non-discriminatory reason for its imposition of the "No Credit" academic sanction and/or an alleged loss of an educational benefit;

(ii)    A school's imposition of appropriate disciplinary consequences for academic misconduct are matters on which courts will not ordinarily permit judicial review;

(iii)   Doe 1 cannot succeed under Title VI and IX as:

      a. no action of which she complains was a result of intentional discrimination;

      b. no TCU official authorized to institute corrective measures in response to a protected activity had actual knowledge of any intentional discrimination and responded with deliberate indifference;

      c. she was not excluded from participation or denied benefits of any TCU educational program or activities on the basis of race or gender or subjected to a hostile educational environment;

d. the alleged actions of TCU were not severe, pervasive and objectively offensive;

e. Doe 1, an African American, was not treated differently than whites under circumstances nearly identical to that of Doe 1; and

f. TCU does not maintain an official policy of deliberate indifference of not investigating or ignoring race or gender discrimination complaints made by African American females; and in any event, such a theory is not cognizable under Title IX. In the very limited instances when courts have permitted this theory to go forward, the cases have all involved serious allegations of prior sexual assault and not discrimination based on race;

(iv)    Doe 1 cannot succeed on a retaliation theory under Title VI and Title IX inasmuch as:

a. the individual who discovered Doe 1's plagiarism was unaware of any protected activity (complaints of discriminatory treatment) when determining she plagiarized;

b. she did not sustain a sufficiently adverse school-related action;

c. no causal connection exists between the complaint and the alleged adverse action; and

d. no reasonable inference exists that the individual who denied her appeal did so in retaliation for her alleged protected complaint.

(v)    Doe 1 cannot pursue a claim of unequal pay/employment discrimination and retaliation. Doe 1 is not alleging a Title VII violation nor has she exhausted Title VII's administrative requirements to pursue a claim for employment discrimination. Further she fails to state a claim because:

a. employment discrimination claims are not viable under Title VI and Title IX; and

b. Doe 1 cannot establish an adverse employment action which is generally a prerequisite to and on which a retaliation claim rests.

(vi)    Doe 1 cannot recover on her section 504 Rehabilitation Act and ADA disability discrimination claims because:

a. she was not excluded from participation in an educational program on the basis of a disability;

b.  her alleged disability was not the sole, or alternatively, a motivating factor in the alleged exclusion;

c.  to the extent the no credit decision is alleged to be an exclusion from participation in an educational program, there is no causal connection between her alleged disability of asthma and the no credit decision; and

d.  the final TCU decision maker affirming on appeal the no credit decision had no knowledge of her alleged disability or any motive to mistreat her because of her disability;

(vii)   Doe 1's failure to accommodate claim under the ADA is not viable because she did not seek, propose, or identify any specific accommodation during the Washington, D.C. summer program, and none was denied by TCU;

(viii)   Doe 1 cannot recover money damages, punitive damages or mental anguish damages under the Rehabilitation Act or the ADA;

(ix)   Doe 1's negligence claims are not viable under a no legal duty analysis, and if a duty is imposed, there is no breach, causation, or damages; and

(x)   Doe 1 has not pled any factual allegations to support viable causes of action, and TCU denies it has any liability to Doe 1, for state law claims of fraud, negligent misrepresentation, assault (directly or by alleged ratification), intentional infliction of emotional distress, false imprisonment, deceptive trade practices under the Texas Deceptive Trade Practices Act, civil conspiracy, breach of fiduciary duty and breach of warranty for educational services;

(xi)   TCU cannot be liable under any theory of *respondeat superior* or vicarious liability regarding Doe 1's federal discrimination claims based on the acts of its employees;

(xii)   TCU has not committed and is not liable for any alleged intentional torts committed by its employees; and

(xiii)   TCU denies Doe 1's claims for recovery of any damages or attorney's fees or that Doe 1 is entitled to any equitable or declaratory relief.

Should any of Doe 1's discrimination claims against TCU survive dismissal, TCU

contends that any acts of race, gender or disability discrimination alleged by Doe 1 are

not due to Doe 1's gender, race, disability, or any other legally protected status. TCU

maintains that any actions, events, activities, or decisions made by TCU relative to Doe

1's complaints as alleged by Doe 1 either did not occur, are misconstrued by Doe 1, or are not the product of intentional discrimination.  Rather, any actions taken by TCU or its employees or agents towards Doe 1 were due to one or more legitimate, non-discriminatory reasons and any actions actually taken by TCU were reasonable, and made in good faith and under the belief that such actions were lawful. TCU denies violating Doe 1's rights.

***Dr. Diane Snow's ("Snow") Statement***

Doe 1 fails to state claims against Snow and her claims should be dismissed for the following reasons:

(i)     With respect to Doe 1's negligence claims against Snow, Snow denies she was negligent or has any individual liability to Doe 1:

  a.  Snow owes no independent duty of reasonable care outside the scope of her employment with TCU to Doe 1;

  b.  Snow owes no legal duty as a university faculty member or administrator towards adult students like Doe 1;

  c.  Snow owes no legal duty to Doe 1 as there is no special relationship between Snow and Doe 1; and

  d.  Snow did not breach any alleged legal duty and none of her acts or omissions are a proximate cause of Doe 1's alleged damages;

(ii)    Doe 1 alleges no physical injuries from Snow's alleged conduct, other than alleged emotional harm.  Absent physical injuries, Doe 1 cannot recover mental anguish or emotional distress damages from Snow;

(iii)   Doe 1 has no viable claim against Snow for intentional infliction of emotional distress because none of the alleged actions of Snow against Doe 1 were made recklessly or intentionally nor was her alleged conduct extreme and outrageous;

(iv)    Snow denies she assaulted Doe 1 or has any liability to Doe 1 for assault as:

  a.  Snow did not intentionally, knowingly or recklessly cause bodily injury to Doe 1;

    b.  Snow did not intentionally or knowingly threaten Doe 1 with imminent bodily injury;

    c.  Snow did not intentionally and knowingly cause offensive or provocative physical contact with Doe 1;

    d.  Snow did not know nor reasonably should have known that the contact would be regarded as offensive or provocative by Doe 1; and

    e.  Doe 1 gave consent relative to any physical contact between Snow and Doe 1;

(v)  Doe 1 cannot recover against Snow for false imprisonment. Snow denies she falsely imprisoned Doe 1. Snow did not willfully detain Doe 1 without Doe 1's consent and without authority of law;

(vi)  Doe 1's civil conspiracy claim is not viable as Snow cannot be liable for civil conspiracy since:

    a.  There was no civil conspiracy;

    b.  Snow did not participate in an underlying intentional tort; and

    c.  Snow cannot be individually liable for civil conspiracy based on her capacity as an employee or agent of TCU.

### Rob Garnett's ("Garnett") Statement

Doe 1 fails to state claims against Garnett and her claims should be dismissed

for the following reasons:

(i)  With respect to Doe 1's negligence claims against Garnett, Garnett denies he was negligent or has any individual liability to Doe 1:

    a.  Garnett owes no independent duty of reasonable care outside the scope of his employment with TCU to Doe 1;

    b.  Garnett owes no legal duty as a university faculty member or administrator towards adult students like Doe 1;

    c.  Garnett owes no legal duty to Doe 1 as there is no special relationship between Garnett and Doe 1; and

    d.  Garnett did not breach any alleged legal duty and none of his acts or omissions are a proximate cause of Doe 1's alleged damages;

(ii)      Doe 1 alleges no physical injuries from Garnett's alleged conduct, other than alleged emotional harm. Absent physical injuries, Doe 1 cannot recover mental anguish or emotional distress damages from Garnett;

(iii)     Doe 1 has no viable claim against Garnett for intentional infliction of emotional distress because none of the alleged actions of Garnett against Doe 1 were made recklessly or intentionally nor was his alleged conduct extreme and outrageous.

(iv)     Doe 1's civil conspiracy claim is not viable, and Garnett cannot be liable for civil conspiracy since:

      a.  There was no civil conspiracy;

      b.  Garnett did not participate in an underlying intentional tort; and

      c.  Garnett cannot be individually liable for civil conspiracy based on his capacity as an employee or agent of TCU.

### Dr. Darron Turner's ("Turner") Statement

Doe 1 fails to state claims against Turner and her claim should be dismissed for the following reasons:

(i)      Turner denies he acted negligently toward Doe 1 and has no individual liability for negligence to Doe 1 because:

      a.  Turner owes no independent duty of reasonable care outside the scope of his employment with TCU to Doe 1;

      b.  Turner owes no legal duty as a university administrator towards adult students like Doe 1;

      c.  Turner owes no legal duty to Doe 1 as there is no special relationship between Turner and Doe 1; and

      d.  Turner did not breach any alleged legal duty and none of his acts or omissions are a proximate cause of Doe 1's alleged damages;

(ii)     Doe 1 alleges no physical injuries from Turner's alleged conduct, other than alleged emotional harm.  Absent physical injuries, Doe 1 cannot recover mental anguish or emotional distress damages from Turner.

***Russell Mack's ("Mack") Statement***

Doe 1 fails to state claims against Mack and her claims should be dismissed for the following reasons:

(i)     With respect to Doe 1's negligence claims against Mack, Mack denies he was negligent or has any individual liability to Doe 1:

    a.  Mack owes no independent duty of reasonable care outside the scope of his employment with TCU to Doe 1;

    b.  Mack owes no legal duty as a university faculty member or administrator towards adult students like Doe 1;

    c.  Mack owes no legal duty to Doe 1 as there is no special relationship between Mack and Doe 1; and

    d.  Mack did not breach any alleged legal duty and none of his acts or omissions are a proximate cause of Doe 1's alleged damages;

(ii)    Doe 1 alleges no physical injuries from Mack's alleged conduct, other than alleged emotional harm. Absent physical injuries, Doe 1 cannot recover mental anguish or emotional distress damages from Mack;

(iii)   Doe 1 has no viable claim against Mack for intentional infliction of emotional distress because none of the alleged actions of Mack against Doe 1 were made recklessly or intentionally nor was his alleged conduct extreme and outrageous; and

(iv)    Doe 1's civil conspiracy claim is not viable as Mack cannot be liable for civil conspiracy since:

    a.  There was no civil conspiracy;

    b.  Mack did not participate in an underlying intentional tort; and

    c.  Mack cannot be individually liable for civil conspiracy based on his capacity as an employee or agent of TCU.

***Leigh Holland's ("Holland") Statement***

Doe 1 fails to state claims against Holland and her claim should be dismissed for the following reasons:

(i)     Holland denies she acted negligently toward Doe 1 and has no individual liability for negligence to Doe 1 because:

      a.  Holland owes no independent duty of reasonable care outside the scope of his employment with TCU to Doe 1;

      b.  Holland owes no legal duty as a university administrator towards adult students like Doe 1;

      c.  Holland owes no legal duty to Doe 1 as there is no special relationship between Holland and Doe 1; and

      d.  Holland did not breach any alleged legal duty and none of her acts or omissions are a proximate cause of Doe 1's alleged damages;

(ii)     Doe 1 alleges no physical injuries from Holland's alleged conduct, other than alleged emotional harm.  Absent physical injuries, Doe 1 cannot recover mental anguish or emotional distress damages from Holland.

### Aaron Chimbel's ("<u>Chimbel</u>") Statement

Doe 1 fails to state claims against Chimbel, and her claims should be dismissed for the following reasons:

(i)     With respect to Doe 1's negligence claims against Chimbel, Chimbel denies he was negligent or has any individual liability to Doe 1:

      a.  Chimbel owes no independent duty of reasonable care to Doe 1;

      b.  Chimbel owes no legal duty as a university faculty member or administrator employed by another university towards Doe 1;

      c.  Chimbel owes no legal duty to Doe 1 as there is no special relationship between Chimbel and Doe 1; and

      d.  Chimbel did not breach any alleged legal duty and none of his acts or omissions are a proximate cause of Doe 1's alleged damages;

(ii)     Doe 1 alleges no physical injuries from Chimbel's alleged conduct, other than alleged emotional harm. Absent physical injuries, Doe 1 cannot recover mental anguish or emotional distress damages from Chimbel;

(iii)     Doe 1 has no viable claim against Chimbel for intentional infliction of emotional distress because none of the alleged actions of Chimbel against Doe 1 were

made recklessly or intentionally nor was his alleged conduct extreme and outrageous;

(iv)    Doe 1's civil conspiracy claim is not viable as Chimbel cannot be liable for civil conspiracy since:

a.  There was no civil conspiracy;

b.  Chimbel did not participate in an underlying intentional tort; and

c.  Chimbel cannot be individually liable for civil conspiracy based on being an employee or agent of TCU as he is not employed or an agent of TCU; and

(v)    Chimbel contends that this Court should not, consistent with traditional notions of fair play and substantial justice, exercise personal jurisdiction over Chimbel as he does not have continuous and systematic contacts with Texas and has not purposely directed any activities toward Doe 1 in Texas. Almost all interaction between Chimbel and Doe 1 occurred in Washington, D.C.

## JANE DOE NO. 2 ("*Doe 2*")

### *TCU's Statement*

Doe 2 graduated from TCU's Honor College in May 2018 following a successful academic career.  Doe 2's lawsuit involves an inadvertent brief leg-touching occurring within a few weeks of graduation which she now pleads is a degrading sexual assault committed by Dr. Andrew Schoolmaster.  Doe 2 waited until after she graduated to file a formal written complaint against Schoolmaster with TCU's Title IX office.  Doe 2's report of sexual assault was thoroughly investigated.  Schoolmaster was found not to be in compliance with a TCU policy and appropriate remedial action was taken. TCU contends that this single instance of inadvertent brief touching does not constitute actionable sexual harassment nor has TCU unlawfully discriminated against Doe 2 on the basis of race.  Doe 2 fails to state claims against TCU.  Doe 2's claim should be dismissed for the following reasons:

(i)    Doe 2 cannot succeed under Title VI and IX as:

a.  the single instance of touching does not constitute a sexual assault or sexual harassment;

b.  the alleged sexual conduct of Schoolmaster was not severe, pervasive and objectively offensive;

c.  she was not excluded from participation or denied benefits of any TCU educational program or activity on the basis of race or gender, or subjected to a hostile educational environment;

d.  no TCU official authorized to institute corrective measures in response to protected activity had actual knowledge of prior complaints of Schoolmaster engaging in inappropriate touching and responded with deliberate indifference;

e.  appropriate remedial action was taken and TCU's response to the alleged harassment was not clearly unreasonable;

f.  Doe 2, an African American, was not treated differently than whites under circumstances nearly identical to that of Doe 2 in connection with reporting claims of harassment;

g.  TCU does not maintain an official policy of deliberate indifference of its Title IX office ignoring or not properly investigating race or sex discrimination complaints made by African American females; and

h.  such theory is not cognizable under Title IX. In the very limited instances when courts have permitted this theory to go forward, the cases have all involved serious allegations of prior sexual assault and not single isolated instances of inadvertent brief touching and not discrimination based on race;

(ii)    Doe 2's negligence claims are not viable under a no legal duty analysis, and if a duty is imposed, there is no breach, causation, or damages;

(iii)    Doe 2 has not pled any factual allegations to support viable causes of action, and TCU denies it has liability to Doe 2, for state law claims of assault directly, or based on ratification as TCU took appropriate remedial action and as a matter of law it did not ratify his alleged actions;

(iv)    TCU cannot be liable under any theory of *respondeat superior* or vicarious liability regarding Doe 2's federal discrimination claims based on the acts of its employees;

(v)    TCU has not committed and is not liable for any alleged intentional torts committed by its employees; and

(vi)    TCU denies Doe 2's claims for recovery of any damages or attorney's fees or that Doe 2 is entitled to any equitable or declaratory relief.

Should any of Doe 2's claims against TCU survive dismissal, TCU contends that any acts of race or sex discrimination alleged by Doe 2 are not due to Doe 2's gender or race or any other legally protected status. TCU maintains that any alleged actions, events, activities, or decisions made by TCU relative to Doe 2's complaints, including the quality and outcome of the investigation of her report of harassment are not the result of indifference or intentional discrimination.  Rather, its actions were not clearly unreasonable or deliberately indifferent. All actions actually taken by TCU or its employees in response to her report were reasonable and made in good faith and under the belief that such actions were lawful. TCU denies violating Doe 2's rights.

### Andrew Schoolmaster's ("_Schoolmaster_") Statement

Doe 2 fails to state an assault claim against Schoolmaster and her claim should be dismissed for the following reasons:

(i)    Schoolmaster denies he assaulted Doe 2 or has any individual liability to Doe 2 for assault as:

   a. Schoolmaster did not intentionally, knowingly or recklessly cause bodily injury to Doe 2;

   b. Schoolmaster did not intentionally or knowingly threaten Doe 2 with imminent bodily injury;

   c. Schoolmaster did not intentionally or knowingly cause sexual or provocative contact with Doe 2; and

   d. Schoolmaster did not know nor reasonably should have known that the brief inadvertent contact would be regarded as offensive or provocative by Doe 2.

***Dr. Darron Turner's ("Turner") Statement***

Doe 2 fails to state claims against Turner and her claim should be dismissed for the following reasons:

(i)      Turner denies he acted negligently toward Doe 2 and has no individual liability for negligence to Doe 2 because:

> a. Turner owes no independent duty of reasonable care outside the scope of his employment with TCU to Doe 2;
>
> b. Turner owes no legal duty as a university administrator towards adult students like Doe 2;
>
> c. Turner owes no legal duty to Doe 2 as there is not special relationship between Turner and Doe 2; and
>
> d. Turner did not breach any alleged legal duty and none of his acts or omissions are a proximate cause of Doe 2's alleged damages;

(ii)      Doe 2 alleges no physical injuries from Turner's alleged conduct, other than alleged emotional harm. Absent physical injuries, Doe 2 cannot recover mental anguish or emotional distress damages from Turner.

***Leigh Holland's ("Holland") Statement***

Doe 2 fails to state claims against Holland and her claims should be dismissed for the following reasons:

(i)      Holland denies she acted negligently toward Doe 2 and has no individual liability for negligence to Doe 2 because:

> a. Holland owes no independent duty of reasonable care outside the scope of his employment with TCU to Doe 2;
>
> b. Holland owes no legal duty as a university administrator towards adult students like Doe 2;
>
> c. Holland owes no legal duty to Doe 2 as there is no special relationship between Holland and Doe 2; and

d. Holland did not breach any alleged legal duty and none of her acts or omissions are a proximate cause of Doe 2's alleged damages;

(ii)     Doe 2 alleges no physical injuries from Holland's alleged conduct, other than alleged emotional harm.  Absent physical injuries, Doe 2 cannot recover mental anguish or emotional distress damages from Holland.

### JANE DOE NO. 3 ("_Doe 3_")

#### *TCU's Statement*

Doe 3 is a May 2020 graduate of TCU's Honors College and was the recipient of a full ride Chancellor's Scholarship.  Although Doe 3 in the past publicly praised TCU as offering a welcoming and caring environment, she now alleges TCU engaged in hostile and adverse actions against her because she is an African American female. TCU denies these allegations. TCU maintains that it has acted appropriately and in a non-discriminatory manner at all times toward Doe 3 and denies that any actions or conduct of TCU were done with an intent to discriminate against her on the basis of race and disability.  Doe 3 fails to state claims against TCU.  Doe 3's claims should be dismissed for the following reasons:

(i)     Doe 3 cannot succeed under Title VI and IX as:

a. no action of which she complains was a result of intentional discrimination;

b. no TCU official authorized to institute corrective measures in response to a protected activity had actual knowledge of any intentional discrimination and responded with deliberate indifference;

c. she was not excluded from participation or denied benefits of any TCU educational program or activities on the basis of race or gender or a hostile educational environment;

d. the alleged actions of TCU were not severe, pervasive and objectively offensive;

    e. Doe 3, an African American female, was not treated differently than whites under circumstances nearly identical to that of Doe 3; and

    f. TCU does not maintain an official policy of deliberate indifference of ignoring or not investigating race or gender discrimination complaints made by African-American females; and in any event, such a theory is not cognizable under Title IX; and in the very limited instances courts have permitted this theory to go forward, it has only been with respect to serious allegations of sexual assault and not discrimination based on race;

    (ii)    Doe 3 cannot succeed under retaliation theory under Title VI and Title IX inasmuch as:

    a. Doe 3 makes but a passing reference to "retaliation" and makes no specific claims of retaliation against TCU;

    b. to the extent she does raise a retaliation claim, Doe 3 cannot show a sufficiently adverse school-related action in response to a protected activity;

    c. no causal connection exists between any complaint and the alleged adverse action; and

    d. no reasonable inference can be made that any alleged retaliation was in response to an alleged protected complaint that she reported;

    (iii)    Doe 3 cannot recover on her Section 504 Rehabilitation Act and ADA disability discrimination claims because:

    a. she was not excluded from participation in any educational program on the basis of disability;

    b. her alleged disability was not a motivating factor in the alleged exclusion;

    c. Doe 3 does not identify any specific educational benefit to which she was allegedly excluded on the basis of her alleged disability of diabetes; and

    d. Doe 3 does not plead that any decision maker about whom she complains of an alleged adverse action or exclusion of an educational benefit had knowledge of her diabetes or need for accommodation;

    (iv)    Doe 3's failure to accommodate claim under the ADA is not viable because she did not seek, propose or identify any specific accommodation and none was denied by TCU;

(v)    Doe 3 cannot recover money damages, punitive damages or mental anguish damages under the Rehabilitation Act or the ADA;

(vi)    Doe 3's negligence claims are not viable under a no legal duty analysis, and if a duty is imposed, there is no breach, causation, or damages;

(vii)    Doe 3 has not pled any factual allegations to support viable causes of action, and TCU denies it has any liability Doe 3;

(viii)    TCU cannot be liable under any theory of *respondeat superior* or vicarious liability regarding Doe 3's federal discrimination claims based on the acts of its employees;

(ix)    TCU has not committed and is not liable for any alleged intentional torts committed by its employees; and

(x)    TCU denies Doe 3's claims for recovery of any damages or attorney's fees or that Doe 3 is entitled to any equitable or declaratory relief.

Should any of Doe 3's claims against TCU survive dismissal, TCU maintains that any actions of race, gender or disability discrimination and retaliation, if any, alleged by Doe 3 are not due to Doe 3's gender, race, disability, or any other legally protected status.  Further, TCU maintains that any alleged actions, events, activities, or decisions made by TCU or its employees relative to Doe 3 are not the product of intentional discrimination and were due to one or more legitimate, non-discriminatory reasons and were made in good faith and under the belief that such actions were lawful. TCU denies violating Doe 3's rights.

### Dr. Darron Turner's ("Turner") Statement

Doe 3 fails to state claims against Turner and her claim should be dismissed for the following reasons:

(i)    Turner denies he was negligent and has no individual liability for negligence to Doe 3 because:

a.  Turner owed no independent duty of reasonable care outside the

scope of his employment with TCU to Doe 3;

    b. Turner owes no legal duty as a university administrator towards adult students like Doe 3;

    c. Turner owes no legal duty to Doe 3 as there is no special relationship between Turner and Doe 3; and

    d. Turner did not breach any alleged legal duty and none of his acts or omissions are a proximate cause of Doe 3's alleged damages;

(ii)    Doe 3 alleges no physical injuries from Turner's alleged conduct, other than alleged emotional harm.  Absent physical injuries, Doe 3 cannot recover mental anguish or emotional distress damages from Turner.

**2.**    **A proposed time limit to file motions for leave to join other parties:**

Plaintiffs propose a deadline of August 21, 2020.  Plaintiffs contend that given the extent and nature of the claims against Defendants there is a reasonable likelihood that additional Plaintiffs may come forward with related claims against Defendants.

Defendants propose a deadline of no later than July 15, 2020, which Defendants contend is sufficient. Doe 1's Original Complaint was filed on January 15, 2020.  In response to Defendants' initial motions to dismiss, Doe 1 amended her complaint on April 13, 2020 and added Does 2 and 3 as Plaintiffs.  Doe 1's lawsuit has been widely publicized and the subject of much discussion on TCU's campus and social media during the Spring 2020 semester.  Aside from the legal propriety of unrelated Plaintiffs' claims being joined in this lawsuit, ample time has passed for additional plaintiffs to come forward.

**3.**    **A proposed time limit to amend the pleadings:**

The parties propose a deadline of February 5, 2021 for any party to file a motion requesting permission to amend.

4.    **Proposed time limits to file various types of motions, including dispositive motions (NOTE: The dispositive motion deadline cannot be less than 90 days before trial; the Court prefers 120 days):**

Plaintiffs propose a deadline of April 12, 2021, which is approximately 120 days prior to Plaintiffs' proposed trial date of August 16, 2021.

Defendants propose a deadline of September 1, 2021, which is over 120 days prior to Defendants' proposed trial date of January 17, 2022. Defendants rationale for a January 2022 trial date is set forth in paragraph 12.

5.    **A proposed time limit for initial designation of experts:**

Plaintiffs propose a deadline for designation of its experts of October 30, 2020, which Plaintiffs contend will allow them adequate time for the same.

Defendants agree to Plaintiffs' proposed deadlines for designation of their experts by October 30, 2020. At the time of the filing of the written designation, Plaintiffs will comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure.

6.    **A proposed time limit for responsive designation of experts:**

Plaintiffs propose a deadline for Defendants designation of its experts of December 11, 2020, which Plaintiffs contend will allow Defendants adequate time for the same.

Defendants propose a later deadline for designation of Defendants' experts of January 29, 2021.  Under Plaintiffs' proposed expert designation date of December 11, 2020, Defendants will have approximately six weeks to evaluate Plaintiffs' experts, determine the need for experts, and locate and retain experts.  Defendants contend this will be insufficient time, particularly with the intervening Thanksgiving holiday and will give Plaintiffs an unfair time advantage, particularly since Plaintiffs seek an earlier trial

setting, yet are proposing to wait until October 30, 2020 to designate experts. Essentially, Plaintiffs propose 4 1/2 months to designate experts and propose to limit Defendants to six weeks to find and designate experts. At the time of the filing of the written designation, Defendants will comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure.

**7.     A proposed time limit for objections to experts (i.e., *Daubert* and similar motions):**

The parties propose that all objections should be filed at least 60 days before

trial.

**8.     A proposed plan and schedule for discovery, a statement of the subjects on which discovery may be needed, a time limit to complete factual discovery and expert discovery, and a statement of whether discovery should be conducted in phases or limited to or focused upon particular issues:**

The parties request that the Court abate discovery (including with respect to Rule 26(a)(1) disclosures mandated by the Court's April 9, 2020 Order [Doc. No. 18], as is further addressed in paragraph 14, below) so that discovery is limited to the parties and claims remaining in the suit after ruling is made on any pending or amended motions to dismiss. Otherwise, the parties anticipate the normal limits on discovery should be sufficient for this case, and anticipate conducting discovery on the claims and defenses alleged by each party after rulings are made on any pending or amended motions to dismiss, as well as discovery pertaining to expert witnesses. The parties anticipate when the discovery abatement period is lifted approximately 9 to 12 months will be needed for discovery to allow time for exchanging and responding to requests for production, interrogatories, admissions, and taking depositions.

Plaintiffs propose a closing date for discovery not earlier than May 1, 2021, given Plaintiffs' proposed trial date of August 16, 2021.

Defendants propose a closing date for discovery not earlier than October 1, 2021, because Defendants contend 12 months will be needed to complete discovery and given the Plaintiffs statement that more plaintiffs may be added to the suit.

The parties propose that they may agree to extend discovery after the discovery deadline and in doing so, agree that any extension will not affect the trial setting, dispositive motions or pre-trial material filing deadlines and will provide written notice of the extension to the Court.

**9.     What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed:**

The parties anticipate the normal limits on discovery should be sufficient for this case.

**10.    Proposed means for disclosure or discovery of electronically stored information ("ESI") and a statement of any disputes regarding the disclosure or discovery of ESI:**

The parties anticipate exchanging ESI via pdf files by email or by secure third-party file sharing services, and/or in encrypted form if confidentiality is required.  Parties may alternatively provide printed copies of pertinent records. All parties reserve the right to seek documents in native format, including metadata of any documents produced, where there is good cause to do so.

**11.    Any proposals regarding the handling and protection of privileged or trial-preparation material that should be reflected in a Court Order:**

The parties anticipate relying on the Federal Rules regarding the treatment of privileged documents including any FERPA protected educational records, except that

attorney-client and trial preparation materials prepared by counsel or parties in anticipation of and after the inception of the litigation process need not be separately logged for purposes of any privilege log. The parties agree that any party may move for protective order as circumstances may require.

12. **A proposed trial date, estimated number of days required for trial and whether a jury has been demanded (NOTE: Generally, the proposed trial date should be approximately one year after the date the initial complaint was filed):**

A jury trial has been requested in this lawsuit.

Plaintiffs collectively propose August 16, 2021 as a trial date, which Plaintiffs contend not only provides ample time to the parties in light of the pending COVID19 pandemic, but also complies with this Courts directive regarding proposed trial date scheduling.   As noted by the Court, a proposed trial date should generally be approximately one year after the date the initial complaint was filed.  In this lawsuit, the initial complaint was filed on January 15, 2020.  Thus, a trial date on or about January 15, 2021 is directed by the Court.  Plaintiffs propose an additional seven months to account for the recent COVID19 pandemic and in the interest of fairness and justice to the parties.

Defendants propose January 17, 2022 as a trial date. Defendants contend an August 16, 2021 trial date is too optimistic given the number of plaintiffs, defendants, numerous witnesses, multiple claims and theories of recovery, and complexity of the issues. This case is still in its infancy because Jane Does 2 and 3 were added by way of an amended complaint on April 13, 2020. Defendants contend a January 2022 trial date is reasonable in light of these circumstances and Plaintiffs' statement that there is a reasonable likelihood that additional plaintiffs may be added to the suit. Given the

Court's directive that continuances of the trial date will not be granted absent extraordinary circumstances, the Defendants believe the trial date they propose gives the parties the best opportunity to complete discovery and prepare the case and be ready for trial.

At this time, the parties estimate 8 days will be needed for trial.

**13.    A proposed date for further settlement negotiations:**

The parties propose a mediation deadline be set after the close of discovery.

**14.    Objections to Fed. R. Civ. P. 26(a)(1) asserted at the Scheduling Conference, and other proposed modifications to the timing, form or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made:**

No objections were asserted at the scheduling conference as to providing initial disclosures under Rule 26(a)(1). However, the parties would propose a modification to the Court's Orders [Doc. Nos. 18 and 22] which requires Rule 26(a)(1) disclosures be made 14 days from June 3, 2020 (such that the parties would be required to exchange such disclosures on June 17, 2020 which is during the briefing period with respect to Defendants' pending motions to dismiss). The parties would propose that the Rule 26(a)(1) disclosures need not be made until after the Court rules on the Defendants' respective motions to dismiss and that such Rule 26(a)(1) disclosures would be exchanged by the parties 14 days thereafter.

**15.    Whether the parties will consent to trial (jury or non-jury) before U.S. Magistrate Judge Irma C. Ramirez:**

The parties do not consent to a trial before a magistrate judge at this time.

**16.    Whether the parties are considering mediation or arbitration to resolve this litigation and a statement of when it would be most effective (e.g., before discovery, after limited discovery, after motions are filed, etc.):**

Plaintiffs are amenable to mediation and contend that mediation would be most effective following the Court's ruling on Defendants' Motions to Dismiss and after limited discovery. Defendants are agreeable to mediation and propose a mediation deadline after the close of discovery to insure that all parties have a thorough understanding of the facts and can fully evaluate the case for settlement, with the understanding that the parties can agree to attend mediation earlier.

The parties request until August 15, 2020 to suggest the name of a mutually agreed upon mediator to the Court and submit that recommendation to the Court.

**17. Any other proposals regarding scheduling and discovery that the parties believe will facilitate expeditious and orderly preparation for trial:**

Not at this time.

**18. Whether a conference with the Court is desired; and**

A conference with the Court is not required at this time.

**19. Any other matters relevant to the status and disposition of this case, including any other Orders that should be entered by the Court under R. 16(b) and (c) and 26(c):**

Defendants anticipate filing a motion to strike portions of Plaintiffs' First Amended Complaint under Rule 12(f), directed to approximately 44 paragraphs of the first 30 pages of the 106 page Amended Complaint under "Statement of Facts" beginning on page 5. These paragraphs provide a detailed historical recitation of immaterial and irrelevant allegations against TCU. The purpose of this motion to strike is for Defendants to avoid having to spend time, effort and attorney's fees directed toward answering these extraneous allegations under the standards imposed by Rule 8(b) that have no relevance or bearing to Doe 1, 2 and 3's respective claims. Defendants also anticipate filing a motion to transfer venue of this case from the Dallas Division to the

Fort Worth Division for convenience of the parties and witnesses, pursuant to 28 U.S.C. § 1404(a).

Plaintiffs object to Defendants contentions and assertions regarding its yet filed Motion to Strike and Motion to Transfer Venue and will assert appropriate legal and factual arguments relating to the same before this Court at the appropriate time.

DATED: June 10, 2020

Respectfully submitted,


*/s/ Nnamdi Anozie*
Kevin B. Wiggins
Texas Bar No. 21441600
kbwiggins@whitewiggins.com

Nnamdi Anozie
Texas Bar No. 24087107
nanozie@whitewiggins.com

**WHITE & WIGGINS, LLP**
1700 Pacific Avenue, Suite 3740
Dallas, Texas 75201
(214) 665-4150
(214) 665-4160 Fax

**ATTORNEYS FOR PLAINTIFFS
JANE DOE NO. 1, JANE DOE NO.
2, and JANE DOE NO. 3**

*/s/ George C. Haratsis*
George C. Haratsis
Texas Bar No. 08941000
gch@mcdonaldlaw.com

Rory Divin
State Bar No. 05902800
rd@mcdonaldlaw.com

Jennifer N. Littman
Texas Bar No. 00786142
jnl@mcdonaldlaw.com

**McDONALD SANDERS,
*A Professional Corporation***
777 Main Street, Suite 2700
Fort Worth, Texas 76102
(817) 336-8651
(817) 334-0271 Fax

**ATTORNEYS FOR DEFENDANTS
TEXAS CHRISTIAN UNIVERSITY,
DR. DIANE SNOW, DR. ANDREW
SCHOOLMASTER, DR. ROB GARNETT,
DR. DARRON TURNER, RUSSELL MACK,
LEIGH HOLLAND, AND AARON CHIMBEL**