IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DESTINEE WILSON, KIANA DAE, TYMERRA COLEMAN, ASHLEY SYLVESTER, and TOYA OKONKWO | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:20-cv-00106-M |
| v. | § § | |
| TEXAS CHRISTIAN UNIVERSITY, DR. DIANE SNOW, and DR. ANDREW SCHOOLMASTER, | § § § § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss Claims of Ashley Sylvester and Toya Okonkwo (ECF No. 94), filed by Defendant Texas Christian University ("TCU"). For the reasons states below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Ashley Sylvester and Toya Okonkwo are African-American women who attended the PhD program in TCU's Department of English. Sylvester enrolled at TCU in the fall of 2015. Fourth Am. Compl. ("FAC") (ECF No. 90) ¶ 262.[1] Sylvester maintains that shortly after enrolling, she began experiencing hostility and harassment from her TCU peers and professors, including by being subjected to racist jokes, commentary, and course materials; being demeaned and cut off mid-speech by the Chair of the Department of English, Karen Steele; and having her hair touched without consent by her classmates. *Id.* ¶ 263. Sylvester alleges that she complained about her treatment during her First Year Review; in response, in a letter dated May

---

[1] For purposes of analyzing TCU's Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the FAC are presumed to be true. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

1

7, 2016, her professors acknowledged "TCU's largely homogenous culture and, at times, racially insensitive—and at times offensive—treatment from [Sylvester's] peers," yet neither TCU nor its agents did anything to address Sylvester's treatment.  *Id.*

Okonkwo enrolled in the same PhD program in the fall of 2016, and alleges she experienced similar racist and isolating treatment almost immediately.  *Id.* ¶ 268.  Specifically, she alleges she was subjected to insensitive remarks and condescension from her professors, including Dr. Steele, who is alleged to have questioned her intelligence, ability, and creativity. *Id.*

In the Spring 2017 semester, Sylvester and Okonkwo enrolled in a class on civil rights, taught by TCU professor Dr. Brad Lucas, entitled "Protest and Violence."  *Id.* ¶ 271.  During this class, Dr. Lucas allegedly assigned racist texts and facilitated racist discussions and presentations, and Sylvester and Okonkwo were made to defend themselves and explain to the class basic tenets of systemic oppression and the ramifications of slavery.  *Id.* ¶¶ 272–74.  In response to attempts to discuss their own academic research interests, Sylvester and Okonkwo were allegedly belittled, berated, and demeaned by Dr. Lucas and other students.  *Id.*  When Sylvester and Okonkwo complained to Dr. Lucas, their concerns were disregarded.  *Id.*

Sylvester and Okonkwo allege other instances of discriminatory and racist treatment, including: Okonkwo was told that funding to attend a program, "Women of Color in the Academy," would be conditioned on her agreeing to recruit for TCU; Dr. Steele made public, disparaging comments about Okonkwo not having a credit card on which to put conference expenses; Sylvester and Okonkwo received only $75 to fund their American and African-American literature reading group, while groups focusing on white and Eurocentric topics received "seemingly unlimited" funding; there was poor participation by faculty and students at

Sylvester and Okonkwo's reading group; Professor David Colon publicly yelled at and berated Sylvester during a December 2017 conference, in response to her assertion that not enough had been done by TCU's minority faculty to address racism endured by African-American students; and Dr. Richard Enos emailed the entire English department, belittling Sylvester and calling her "unprofessional." *Id.* ¶¶ 276–81, 289.  Sylvester and Okonkwo further allege that when they worked as professors in TCU's Department of English, they were berated and bullied by their white colleagues, the result being that Sylvester and Okonkwo were unable to hold office hours in the shared office space and instead had to meet students in the library, bookstore, or hallway. *Id.* ¶ 288.  Sylvester and Okonkwo allege that their experiences at TCU, and the degree of racist hostility and harassment they experienced, left them feeling isolated, stressed, anxious, unable to complete coursework, and questioning of their self-worth, all of which caused both to suffer adverse psychological and physiological effects.  *Id.* ¶¶ 264–65, 268–70, 281, 284–85, 292–93.

The FAC details numerous instances where Sylvester and Okonkwo reported racist treatment and harassment to TCU.  Okonkwo alleges that in December 2016, she visited TCU's Title IX Office to complain about Dr. Steele, but was discouraged and dissuaded from filing a formal complaint by a TCU employee, Leigh Holland, because final semester grades had not yet issued; according to Holland, grades were needed to measure whether Okonkwo was adversely impacted by Dr. Steele's behavior.  *Id.* ¶ 269.  On several occasions, Sylvester and Okonkwo informally reported their experiences with racism to the Director of Graduate Studies, Dr. Narian.  *Id.* ¶¶ 274–75, 279–82.  Dr. Narian did not advise Sylvester and Okonkwo to formalize their complaints, and on one occasion, Dr. Narian discouraged Sylvester from attempting to remove Dr. Lucas from her exam committee, despite her complaints about the racism she experienced in his class, saying that would likely result in retaliation against her.  *Id.* ¶¶ 274–75.

Rather than sincerely addressing their complaints or referring them to the Title IX Office to make a formal complaint, TCU instructed Sylvester and Okonkwo simply to write their concerns on course evaluations and to attend conferences on diversity.  *Id.* ¶ 280.  However, in December 2017, after Okonkwo included her concerns about racist treatment in what she thought was an anonymous course evaluation, she inadvertently became the subject of what she calls a "witch hunt" by the professor, who wanted to confront the student who had given her a negative review.  *Id.* ¶ 284.  Okonkwo alleges she "was left knowing that there was no real recourse for her treatment at TCU."  *Id.*

In December 2017, Sylvester and Okonkwo were informed by a TCU professor that they should report their complaints to TCU's Title IX Office.  *Id.* ¶ 282.  The FAC alleges that during this meeting, Okonkwo recalled her earlier conversation with Holland, which gave her "little hope that [reporting discrimination] would make any difference at all."  *Id.*  Dr. Narian confirmed to Sylvester and Okonkwo that she had not previously recommended they report their concerns to the Title IX Office because she "knew that Title IX would not do anything."  *Id.*  On January 18, 2018, over Dr. Narian's advice, Sylvester submitted a formal complaint and visited Dr. Turner in the TCU Title IX Office to explain her experience as an African-American woman at TCU.  *Id.* ¶ 286.  No formal investigation was opened.  *Id.*  Four months later, in April 2018, Sylvester, Okonkwo, and other racial minority PhD students were taken to lunch by Holland and Dr. Turner, who explained that TCU had heard their complaints and would be working to rectify the problems.  *Id.* ¶ 287.  Sylvester and Okonkwo claim nothing changed.  *Id.*

In the fall of 2018, Sylvester began the process of applying for an employment position in TCU's Title IX Office.  *Id.* ¶¶ 289–93.  On December 5, 2018, during her final interview, Sylvester was informed that if she accepted the job, she "would have to forfeit all of her prior

Title IX complaints of discrimination at TCU." *Id.* ¶ 292. Sylvester declined the position, and on January 16, 2019, she quit the PhD program. *Id.* ¶¶ 292–93.

Okonkwo visited the TCU Title IX Office on March 26, 2019, where she again met with Holland; however, rather than focusing on how Okonkwo was being treated, Holland again focused on whether Okonkwo's grades had been impacted, and no formal investigation into her complaints was opened. *Id.* ¶ 295. In May 2019, a meeting was held with the entire Department of English, where Dr. Turner announced that the civil rights of minority students had not been violated, but an external investigation into whether there was a racist climate within the Department of Education would be commencing. *Id.* ¶ 296. According to the FAC, no such investigation was opened. *Id.* In November 2019, Okonkwo met with TCU Chancellor Boschini to detail her complaints, but instead of focusing on the allegations of racism, Chancellor Boschini asked Okonkwo, "if there were a job at TCU for you, would you take it?" *Id.* ¶ 297. Okonkwo alleges she declined this "apparent offer to waive her complaints in exchange for a job and presumably compensation." *Id.* On January 13, 2020, after being notified of the Complaint in this lawsuit, TCU commenced an external investigation into complaints of racism. *Id.* ¶ 298.

On January 15, 2020, Jane Doe No. 1—now identified in the FAC as Destinee Wilson— filed this lawsuit. ECF No. 1. On January 29, 2021, Plaintiffs filed the Fourth Amended Complaint, naming Sylvester and Okonkwo as additional plaintiffs seeking relief for intentional discrimination based on official policy under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. (Count I), deliberate indifference under Titles VI and IX (Count II), and hostile environment under Titles VI and IX (Count III).

TCU filed its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), alleging that Sylvester and Okonkwo failed to state a claim for disparate treatment or hostile education environment on the basis of sex under Title IX, and that the statute of limitations bars all claims they assert, except Okonkwo's claims based on conduct occurring after January 29, 2019.

## II.    LEGAL STANDARD

Rule 12(b)(6) authorizes dismissal for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court must "constru[e] all factual allegations in the light most favorable to the plaintiffs." *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013).  The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  For a complaint to survive a Rule 12(b)(6) motion, it must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A facially plausible complaint "must allege more than labels and conclusions, . . . factual allegations must be enough to raise a right to relief above the speculative level." *Jabaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

## III.    ANALYSIS

These claims are not fanciful, conclusory, or speculative; indeed, if these allegations are factually accurate, they describe wholly unacceptable and shameful behavior.  However, the Motion to Dismiss is based on purely legal grounds that, if established, preclude Sylvester and Okonkwo from going forward.  Specifically, TCU moves to dismiss Sylvester's and Okonkwo's: (1) Title VI and Title IX claims prior to January 29, 2019, on limitations grounds; and (2) disparate treatment and hostile environment claims under Title IX, on the grounds that the FAC does not state a claim for discrimination based on sex.

a. **Statute of Limitations.**

TCU argues that the statute of limitations bars all claims asserted by Sylvester and Okonkwo, other than Okonkwo's Title VI and Title IX claims based on an alleged hostile environment after January 29, 2019. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Claims brought under Title VI and Title IX are governed by the forum state's statute of limitations for personal injury actions. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759–60 & n.5 (5th Cir. 2015). In Texas, the applicable limitations period is two years. Tex. Civ. Prac. & Rem. Code § 16.003.

Absent tolling, the statute of limitations begins to run when a plaintiff's claim accrues. *King-White*, 803 F.3d at 762. Under federal law, a claim accrues at the moment the plaintiff becomes aware she has suffered an injury or has sufficient information to know that she has been injured. *Id.* A plaintiff's awareness consists of two elements: "(1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001)). A plaintiff need not know that she has a legal cause of action for her claim to accrue, but rather, she need know only the facts that would ultimately support a claim. *Id.* "'[A]wareness' for accrual purposes does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'" *Id.* (second alteration in original) (quoting *Piotrowski*, 237 F.3d at 576).

The pertinent cutoff date for assessing timeliness is January 29, 2019, two years before the FAC was filed. Based on the allegations in the FAC, the Court concludes that all of Sylvester's claims are untimely, and that Okonkwo's Title VI and Title IX claims based on

7

official policy and deliberate indifference based on conduct occurring prior to January 29, 2019, are untimely.

### i. Title VI and Title IX claims based on official policy and deliberate indifference.

The Court will first address Sylvester and Okonkwo's Title VI and Title IX claims based on TCU's official policy or custom of intentional discrimination, and Title VI and Title IX claims based on TCU's notice of and deliberate indifference to the alleged discrimination. Regarding the official policy claim, the FAC alleges that TCU engaged in a "pattern and practice of behavior designed to discourage and dissuade students who have been racially or sexually discriminated against from seeking prosecution and protection and from seeking to have discrimination reports fully investigated," and that "TCU's practices in handling reports of discrimination and assault—discouraging victims from reporting their mistreatments and failing to investigate their claims or punish their assailants—constitutes a policy of intentional discrimination." FAC ¶¶ 316–17. As to the deliberate indifference claim, the FAC alleges that "as a direct result of TCU's acts or omissions, Plaintiffs were intentionally made to ensure hostile and harassing treatment in their educational pursuit, including but not limited to . . . TCU's deliberate indifference to Plaintiff Sylvester and Okonkwo's complaints of discrimination at TCU to TCU officials." *Id.* ¶¶ 326–27.

TCU argues Sylvester and Okonkwo were aware of their injuries as well as their potential Title VI and Title IX claims no later than January 18, 2018, when Sylvester met with Dr. Turner in TCU's Title IX Office to "inform him of her and other African-American women's experience at TCU and to plead with him to take seriously the real harm that resulted from the hateful and bigoted practices and disparate racial treatment and impact at TCU," but no investigation was opened. *Id.* ¶ 286. The Court agrees. Although their claims may have accrued earlier, by at

8

least that date, both Sylvester and Okonkwo had experienced discrimination, hostility, and harassment, and had made multiple reports of their mistreatment to TCU professors and staff, without effect.  However, because the FAC was not filed until January 29, 2021, over three years later, Sylvester and Okonkwo's official policy and deliberate indifference claims based on conduct outside the limitations period are untimely.

Regarding Sylvester specifically, she alleges experiencing hostility and harassment from TCU students and professors shortly after she enrolled at TCU in the fall of 2015.  FAC ¶¶ 262–64; *id.* ¶ 262 (after enrolling, Sylvester "over the next four years . . . was subject to rank hostility and harassment at the hands of her peers and professors").  Starting in 2015, Sylvester complained about her mistreatment multiple times, which was acknowledged by TCU employees but did not result in any meaningful response.  *Id.* ¶¶ 263, 264, 269, 272–75, 279–82, 286; *see also id.* ¶ 264 (Sylvester's professors acknowledging in 2016 that she had received "racially insensitive—and at times offensive—treatment").  Okonkwo likewise alleges that she experienced hostility and harassment beginning when she joined TCU in the fall of 2016, and that she made multiple complaints to TCU employees and professors, starting in 2016, without any follow-up or investigation by TCU.  *Id.* ¶¶ 268–82, 295.

Thus, by January 18, 2018, Sylvester and Okonkwo had made numerous complaints regarding discrimination without effect, and thus were aware that TCU had failed to properly investigate or follow-up on their concerns.  In addition, by January 18, 2018, Sylvester and Okonkwo were aware that they had both been actively and intentionally discouraged from reporting discrimination, and believed TCU did not investigate complaints of discrimination.  In December 2016, Okonkwo visited the Title IX Office to complain about racist treatment, but was discouraged from making a formal complaint.  *Id.* ¶ 270 ("Ms. Holland was successful in fielding

Okonkwo's valid Title IX complaint.  Of course, neither Ms. Holland nor anyone from the Title

IX office or TCU at all ever followed up with Okonkwo.").  Based on that meeting, Okonkwo

alleges she had "little hope" that reporting discrimination to TCU "would make any difference at

all."  *Id.* ¶ 282.  In December 2017, Dr. Narian admitted to Sylvester and Okonkwo she had

intentionally not recommended that they report their complaints of discrimination to the Title IX

Office because she "knew that Title IX would not do anything."  *Id.*  By December 2017,

Okonkwo alleges she knew "there was no real recourse" to address her mistreatment at TCU.  *Id.*

¶ 284.  And on January 18,  2018, when Sylvester made a formal complaint to the Title IX

Office, she did so "against the advice of Dr. Narian."  *Id.* ¶ 286.  Thus, Sylvester and Okonkwo

not only knew that TCU would not investigate their complaints, but also that they had been

actively discouraged from making them.

In sum, by no later than January 18, 2018, both Sylvester and Okonkwo were aware of

their injuries and the connection between their injuries and TCU's actions, namely TCU's

alleged unofficial policy of discrimination in its discouraging of complaints and handling of

reports of racism, as well as its deliberate indifference to Sylvester and Okonkwo's reports by

failing to investigate or take steps to remedy their numerous complaints of racism and

discrimination.  Because Sylvester and Okonkwo did not file within the two-year limitations

period, their Title VI and Title IX unofficial policy and deliberate indifference claims based on

conduct occurring prior to January 29, 2019, are untimely.

The FAC alleges that Sylvester left TCU on January 16, 2019, and it contains no

allegations after that date of any additional efforts by Sylvester to report discrimination or TCU's

indifference or disregard to her complaints.  *See id.* ¶ 293.  Indeed, the FAC contains no further

allegations relating to Sylvester in any regard after January 16, 2019.  Accordingly, Sylvester's claims based on official policy and deliberate indifference are untimely in their entirety.

As to Okonkwo, the FAC does allege that she made a complaint during the limitations period.  Specifically, Okonkwo visited the Title IX Office on March 26, 2019 where her efforts to "report the onslaught of issues" she faced were rebuffed by Holland, who focused on Okonkwo's grades as opposed to her treatment.  *Id.* ¶ 295.  Thus, while Okonkwo's claims based on conduct occurring prior to January 29, 2019, are untimely, the statute of limitations does not bar her official policy and deliberate indifference claims based on conduct occurring after January 29, 2019, including her March 26, 2019, visit to the Title IX Office and TCU's subsequent failure to address her complaint.  *See Perez v. Laredo Junior Coll.*, 706 F.2d 731, 734 (5th Cir. 1983) ("[I]f the statutory violation occurs as a result of a continuing policy, itself illegal, then the statute [of limitations] does not foreclose an action aimed at the company's enforcement of the policy within the limitations period.") (Title VII).

The Court further concludes that Sylvester and Okonkwo's untimely claims are not tolled.  Sylvester and Okonkwo do not expressly argue that any particular tolling doctrine applies to save their otherwise untimely claims, and instead maintain that their claims accrued on January 15, 2020, when Plaintiff Destinee Wilson first filed the Complaint in this case.  Sylvester and Okonkwo maintain they had no reason to look into whether TCU's conduct against African-American women violated Title IV or Title IX until Wilson filed suit, because prior to that point they "were unaware of the extent of the historical and ongoing bigotry at TCU."  Resp. (ECF No. 97) at 19.  According to Sylvester and Okonkwo, it was only after media reports and commentary on the lawsuit that Sylvester and Okonkwo "were made aware that they had reason

to further look into whether TCU's conduct towards African-American women violated Title VI and Title IX." *Id.*

When a federal cause of action borrows a state statute of limitations, such as with Title VI and Title IX claims, the state's tolling rules are borrowed as well. *King-White*, 803 F.3d at 764. In Texas, the discovery rule is a very limited exception to limitations which is strictly construed by courts, and applies only in cases where the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable. *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). It tolls the statute of limitations "only until the claimant knows or should know the facts that could support a cause of action—not until she realizes that the facts do support a cause of action." *Levels v. Merlino*, 969 F. Supp. 2d 704, 722 (N.D. Tex. 2013).

To the extent Sylvester and Okonkwo are asserting that their claims should be tolled under the discovery rule, that argument fails. Sylvester and Okonkwo's alleged injuries were not inherently undiscoverable; as discussed, both Sylvester and Okonkwo knew the facts supporting their causes of action by at least January 18, 2018. In addition, Sylvester and Okonkwo's argument that they were unaware of the extent of bigotry at TCU against African-American women until Wilson filed the Complaint in January 2020 is undermined by their own allegations in the FAC. *See, e.g.*, FAC ¶ 263 (after enrolling, "Sylvester . . . learned very quickly that TCU was not a welcoming environment to African-American women"); *id.* ¶ 265 ("During 2016 Visit Day, Sylvester . . . warned Okonkwo that her experience at TCU had been very hard because of her race and gender."); *id.* ¶ 267 ("Okonkwo knew all too well of TCU's history. . . . Okonkwo had learned of TCU and its racist history in Fort Worth through stories of the racist conduct of

TCU's student, faculty and staff, which her grandmother and other African-American residents directly experienced.").

Moreover, it is irrelevant that Sylvester and Okonkwo may have not specifically known that they had a legal cause of action available to them, given that they knew the facts supporting their claims when they occurred—*i.e.*, that they repeatedly made complaints about racism and discriminatory treatment, that they were discouraged from making such complaints, and that nothing resulted from those complaints. *See King-White*, 803 F.3d at 762; *see also Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123, 1134 (D. Or. 2016) ("Ms. Samuelson learned of OSU's deliberate indifference to her report of rape when OSU was in fact deliberately indifferent to her own report of the assault."), *aff'd*, 725 F. App'x 598 (9th Cir. 2018).  The FAC describes circumstances that would prompt a reasonable person to investigate potential claims; for instance, Sylvester and Okonkwo both visited TCU's Title IX Office, and in December 2018, Sylvester was told that to work at TCU's Title IX Office, she would have to forfeit her Title IX complaints.  FAC ¶¶ 281–82, 286, 292.  At minimum, Sylvester and Okonkwo were both aware of Title IX, and at least Sylvester knew her complaints were not completely meritless, given that TCU would have required that she drop them in exchange for employment.  Under these circumstances, a reasonable person would be prompted to investigate TCU's conduct further.

Alternatively, Sylvester and Okonkwo argue that their claims relate back to the filing of the Original Complaint under Rule 15, and that their claims are timely as part of a "continuing violations" theory.  "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644, 659 (2005).  "[W]hen new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by

limitations if it was untimely filed." *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985). In making this assessment, a "critical" inquiry is "whether the opposing party was put on notice regarding the claim raised therein." *Id.*

Here, there is no factual overlap between Sylvester and Okonkwo's allegations and those of the other Plaintiffs. Sylvester and Okonkwo allege discrimination and injuries inflicted as a result of actions by different TCU employees and faculty, in a different academic program, and occurring at different time periods. Other than the fact that all Plaintiffs allege that TCU has a policy of intentional discrimination and that TCU did not adequately address their complaints of discrimination, there are no common allegations of conduct, transactions, or occurrences between Sylvester and Okonkwo's claims and those of the other Plaintiffs. Accordingly, TCU could not have been on notice of Sylvester and Okonkwo's claims based on the facts in the Original Complaint; to conclude otherwise suggests that Wilson's Complaint put TCU on notice of every other student's potential allegations of discrimination and deliberate indifference to complaints of discrimination, an absurd implication.[2]

Sylvester and Okonkwo point only to this Court's order permitting joinder of Sylvester and Okonkwo to assert that the Court has already found a "factual nexus" between Wilson's initial Complaint and Sylvester and Okonkwo's claims. Resp. (ECF No. 97) at 20. However, the standard for joinder under Rules 20 and 21 is not interchangeable with the relation-back doctrine under Rule 15; in its Order permitting joinder of Sylvester and Okonkwo's claims, the

---

[2] Sylvester and Okonkwo also suggest that TCU had notice of their allegations based on Plaintiffs' failed attempt of June 10, 2020, to add Sylvester and Okonkwo's claims as part of the Second Amended Complaint, which the Court struck because Plaintiffs did not seek leave to amend prior to joining Sylvester and Okonkwo (then identified under the pseudonyms of "Jane Doe 4" and "Jane Doe 5"). *See* ECF Nos. 38, 39. However, the stricken complaint has no legal effect, and accordingly does not impact the Court's analysis. *See U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 295 (5th Cir. 2003) ("[I]f an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval." (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1484, at 601 (1990))).

Court did not conclude that a common core of operative facts united the original and more recently asserted claims, but rather that the differences in the Plaintiffs' respective allegations did not preclude joinder under Rule 20.  *See* ECF No. 83.

In addition, a continuing violations theory cannot resurrect Sylvester and Okonkwo's untimely official policy and deliberate indifference claims.  "The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred." *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 (5th Cir. 1993).  However, the Supreme Court has cabined the application of the continuing violation doctrine in the discrimination context, concluding that "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice,'" which is not subject to the continuing violations doctrine, and "only incidents that took place within the timely filing period are actionable."  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (Title VII context).  Instead, only claims of hostile environment or harassment may qualify as a continuing violation.  *Id.* at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."); *see also Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020) (applying the continuing violation doctrine to a hostile environment claim under Title VI and Title IX).

Accordingly, to the extent the continuing violations doctrine is available, it is applicable only to Sylvester and Okonkwo's hostile environment claim, and does not apply to their claims of intentional discrimination based on official policy or deliberate indifference.  Indeed, to conclude that TCU's alleged continued indifference to their complaints outside the limitations period qualifies as a continuing violation would "effectively vitiate[]" the statue of limitations.

*See Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006) ("Under Stanley's theory, as long as the Trustees do not provide her desired relief, they are continuing to be 'deliberately indifferent' and subject to suit.  At oral argument, Stanley conceded that this would allow her to bring suit twenty years from now.").

### ii.  Title VI and Title XI claims based on hostile environment.

As to Sylvester and Okonkwo's claims based on a hostile environment theory, the Court concludes that although Okonkwo's claim is not barred by the statute of limitations, Sylvester's claim is untimely.  The FAC alleges that TCU and its agents violated Title VI and Title IX by subjecting Sylvester and Okonkwo to a "series of intentional hostile acts and adverse actions designed to deprive them of the benefits of their education at TCU and derail their academic pursuit" because of their race and sex.  FAC ¶¶ 334–35.

Sylvester left TCU on January 16, 2019, over two years before the FAC was filed, and the FAC contains no allegations of hostile environment—whether it be harassment, hostility, or adverse action—occurring after she withdrew.  *See id.* ¶¶ 292–93.  The lack of any allegations that Sylvester was harassed or experienced hostility during the limitations period renders the continuing violations doctrine inapplicable.  *See Stanley*, 433 F.3d at 1137 (declining to apply the continuing violation doctrine to Title IX hostile environment claims where plaintiff "has not alleged that the University caused her to undergo, or be vulnerable to, any harassment during the limitations period, a time when she was not present at the University").  To the extent Sylvester continued to suffer lingering effects from her treatment at TCU into the limitations period, those qualify only as continuing consequences, not additional unlawful acts.  *McGregor*, 3 F.3d at 866–67 (the continuing violation doctrine does not cover "a single violation followed by continuing consequences").  Accordingly, Sylvester's claim for hostile environment under Title VI and Title IX is untimely.

Regarding Okonkwo, however, the FAC does contain allegations of additional conduct occurring within the limitations period.  Specifically, Okonkwo visited the Title IX Office in March of 2019 where her efforts to make a formal complaint were rebuffed, and in November 2019 met with Chancellor Boschini, who asked her "if there were a job at TCU for you, would you take it?"  *Id.* ¶¶ 295, 297.  She also attended a meeting in May 2019 where Okonkwo and other racial minority students were told their civil rights had not been violated.  *Id.* ¶ 296.

If "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Sewell*, 974 F.3d at 584.  Accordingly, to the extent these post-January 29, 2019, allegations state an actionable claim for hostile environment under Title VI and Title IX, because Okonkwo filed within the two-year limitations period, her claim for hostile environment is timely, and the entire time period of the alleged hostile environment may be considered for purposes of determining liability.

***

In light of the foregoing, because Sylvester's allegations are based entirely on conduct occurring before she left TCU on January 16, 2019, outside of the limitations period, the Court grants TCU's Motion to Dismiss as to all of Sylvester's claims.  The Court further grants TCU's Motion to Dismiss Okonkwo's Title VI and Title IX official policy and deliberate indifference claims based on conduct predating January 29, 2019; however, Okonkwo's hostile environment claim, and official policy and deliberate indifference claims based on conduct after January 29, 2019, are not barred by the statute of limitations, and thus TCU's motion to dismiss those claims on timeliness grounds is denied.

17

### b. Okonkwo fails to state a plausible claim for deliberate indifference or hostile environment under Title IX.

In addition to its statute of limitations argument, TCU further argues that Sylvester and Okonkwo fail to state a claim for relief under Title IX.[3]

Title IX of the Education Amendments of 1972 provides, in relevant part, that: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Sylvester and Okonkwo allege TCU violated Title IX's prohibition against disparate treatment "via TCU's official policy of intentional discrimination" (Count I), "via TCU's deliberate indifference to the complaints of discrimination made by Plaintiffs . . . Sylvester and Okonkwo to TCU officials authorized to institute corrective measures," (Count II), and by "subjecting Plaintiffs . . . Sylvester and Okonkwo to a series of intentional hostile acts and adverse actions designed to deprive them of the benefits of education at TCU and derail their academic pursuit because of their gender" (Count III). FAC ¶¶ 311, 321, 335.

Because the Court has already dismissed all of Sylvester's claims as untimely, the Court will limit its analysis to Okonkwo's claims that were timely filed. In addition, as explained in the Order addressing the Motions to Dismiss Jane Doe 1's claims, the Court previously found that Plaintiffs, including Okonkwo (then identified as Jane Doe 5), sufficiently pleaded that TCU's policy or custom of inadequately handling reports of race and gender discrimination constitutes an official policy of discrimination.[4] ECF No. 83, at 19. Accordingly, the Court's

---

[3] Sylvester and Okonkwo also bring claims under Title VI; however, TCU acknowledges in its Reply that Sylvester and Okonkwo "have sufficiently plead a claim alleging race discrimination." Reply (ECF No. 100) at 2.
[4] In ruling on TCU's prior Motion to Dismiss, the Court considered the allegations and claims stated by Sylvester and Okonkwo (then, Jane Doe No. 4 and Jane Doe No. 5, respectively) in Plaintiffs' previously proposed amended complaint (ECF No. 40-1) for purposes of determining whether Plaintiffs state a Title VI or Title IX claim based on an official policy theory. ECF No. 83 at 18 n.7.

analysis is limited to Okonkwo's Title IX disparate treatment claims for discrimination via deliberate indifference based on conduct occurring after January 29, 2019, and her claim for hostile environment.

### i. Deliberate Indifference.

In order to state a disparate treatment claim under Title IX, a plaintiff must allege that the defendant engaged in intentional discrimination; and that the defendant received federal financial assistance. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393, 397 (5th Cir. 1996). To establish a prima facie case of intentional discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she suffered an adverse action at the hands of the defendant in pursuit of her education; (3) she was qualified to continue in pursuit of her education; (4) and she was treated differently from similarly situated students who were not members of her protected class. *Gonzalez v. Northside Indep. Sch. Dist.*, SA-20-CV-00926-XR, 2020 WL 5640459, at *4 (W.D. Tex. Sept. 22, 2020) (citation omitted); *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (citation omitted) (To state a prima facie case for discrimination, a student who is a member of a protected class must show that other students not in the protected class were "treated differently under circumstances 'nearly identical' to [the student's]").

TCU argues that the FAC does not allege sufficiently a disparate treatment claim based on a deliberate indifference theory, because Okonkwo does not allege or identify any similarly situated male students who received different treatment. The Court agrees. The FAC does not allege specific facts that support the conclusion that any other male was treated differently under circumstances nearly identical to Okonkwo. Indeed, the FAC does not identify any other male graduate student who attended the same PhD program or classes as Okonkwo. Accordingly, the

Court grants TCU's Motion to Dismiss Okonkwo's Title IX disparate treatment claims based on deliberate indifference.

### ii.  Hostile Environment Claim.

A Title VI or Title IX claim may be based on the theory that a hostile environment existed. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648–52 (1999); *Sewell*, 974 F.3d at 583.  To establish a violation of Title VI or Title IX under this theory, a plaintiff must show that (1) the harassment was "so severe, pervasive, and objectively offensive" that it can be said to deprive the victim of access to educational opportunities or benefits provided by the school, and the defendant (2) had actual knowledge, (3) had control over the harasser and the environment in which the harassment occurs, and (4) was deliberately indifferent. *Sanches v. Carrollton– Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citation omitted).

TCU argues that Okonkwo has not pleaded sufficiently that the harassment she alleges was based on the fact that she is a woman.  The Court agrees.  Although the FAC alleges hostility and harassment experienced by Okonkwo based on race, the FAC contains no allegations indicating that she was harassed was based on her sex.  For instance, the FAC contains no allegations of "sex-specific language . . . aimed to humiliate, ridicule, or intimidate." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007).  Accordingly, because Okonkwo fails to allege adequately pervasive harassment based on her sex, the Court grants TCU's Motion to Dismiss Okonkwo's Title IX claim based on a hostile environment theory.  *See Whitlock v. Lazer Spot, Inc*., 657 F. App'x 284, 287 (5th Cir. 2016) (affirming dismissal of hostile environment claims under Rule 12(b)(6) where the complaint did not link the harassment to the plaintiff's protected status).

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** TCU's Motion to Dismiss.  Sylvester's Title VI and Title IX Claims are **DISMISSED**. Okonkwo's Title IX deliberate indifference and hostile environment claims, and Title VI and Title IX official policy and Title VI deliberate indifference claims based on conduct prior to January 29, 2019, are **DISMISSED**.  Okonkwo's only remaining claims are her Title VI and Title IX official policy and Title VI deliberate indifference claims based on conduct occurring after January 29, 2019, and her Title VI hostile environment claim.

The Court previously warned Plaintiffs that "[e]xcept under extraordinary circumstance," Plaintiffs would not receive additional opportunities to amend their complaint.  ECF No. 83.  The Court is aware of no extraordinary circumstances justifying additional amendment; accordingly, all of the claims dismissed in this Order are **DISMISSED WITH PREJUDICE**.

TCU's Motion for Summary Judgment against Ashley Sylvester (ECF No. 127) is **DENIED AS MOOT**.  In light of this Order, TCU is directed to submit an amended Motion for Summary Judgment against Toya Okonkwo (ECF No. 123) addressing Okonkwo's remaining claims within one week of this Order.

**SO ORDERED**.

September 15, 2021.

BARBARA M. G. LYNN
CHIEF JUDGE

21